IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MISTY M. ENDRISS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-10-1401-L |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 416(I), 423.   Defendant has answered the

Complaint and filed the administrative record (hereinafter TR___), and the parties have

briefed the issues.   The matter has been referred to the undersigned Magistrate Judge for

initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following reasons, it

is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff applied for benefits on July 23, 2008 (protective filing date), alleging that she

was unable to work beginning October 30, 2007, when she was 36 years old.  (TR 115-116,

137).  Plaintiff alleged disability due to the residual effects, including constant pain and limited range of motion, from two operations and fusion of three levels of her cervical spine, a "back injury" in July 2007, migraine headaches, numbness and tingling in her arms and hands, and tremors in her right arm. (TR 141).

Plaintiff's application was denied at the administrative level. (TR 63, 65-69).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Hiltbrand ("ALJ") on December 16, 2009.  (TR 26-62).  Plaintiff testified at the hearing that she was 38 years old, had a high school education, and had undergone surgery consisting of a two-level cervical fusion in 2001.  She had a "good" result from the surgery and returned to work in 2003.  She injured her neck again in August 2006 and underwent a second surgery consisting of a one-level cervical fusion in July 2007.  She returned to work following her surgery but resigned her position as an office worker in October 2007 because she was unable to perform the work.  At the time of the hearing, she was being treated by Dr. Munneke with medication management and doing physical therapy exercises to strengthen her arm at home.  She also performed some home maintenance chores, stopping as needed due to pain.

Plaintiff stated that her pain had increased over time and that doctors had imposed a 10-pound weight lifting limitation. She drove but did not drive alone because of limited ability to rotate her neck.  She also described a right hand and arm tremor that began prior to her second neck operation.  She indicated she was able to tie shoe laces and use bottons and zippers but had difficulty gripping objects because of the tremor.  Plaintiff stated that the

2

fingers in her right hand were constantly numb, and she had to elevate her feet to take "tension off [her] back," although she had not sought medical treatment for back pain. To reduce her pain, she would lie down for approximately 45 minutes at a time 4 times per week, used a heating pad twice a day for 10 minutes at a time, and sometimes took hot showers. She felt "good" mentally and had not sought mental health treatment. She estimated she could sit for 40 to 45 minutes at a time and stand or walk for one hour at a time. She had difficulty concentrating because she must "stop whatever I'm doing to manage my pain" and her medications caused fatigue.

The VE testified (TR 56-62) concerning the exertional and skill requirements of Plaintiff's previous jobs as a loan supervisor (sedentary, skilled), sander (medium, semi-skilled), security manager (light, skilled), credit card clerk (sedentary, semi-skilled), and receiving manager (light but described as medium, semi-skilled). In response to hypothetical questioning, the VE testified concerning the availability of jobs.

Following the hearing, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 13-21). The Appeals Council declined to review this decision. (TR 1-3).

II. Standard of Review

Plaintiff now seeks judicial review of the final decision of the Defendant Commissioner embodied in the ALJ's determination. Judicial review of a decision to deny benefits is limited to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were

applied.  Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003).  This review does not contemplate reweighing the evidence or substituting the Court's judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992).  The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole.  Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record."  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(I).  The Commissioner follows a five-step sequential evaluation procedure to determine whether a claimant is disabled. Doyal, 331 F.3d at 760.  The claimant has the burden of establishing a prima facie case of disability at the first four steps.  Id.  In this case, Plaintiff's claim was denied at step four of the sequential process.

III. Analysis

Plaintiff raises two issues: (1) whether the ALJ properly evaluated the medical source opinions and (2) whether the ALJ's RFC assessment is supported by substantial evidence.

A. Treating Physician Analysis

Following the sequential evaluation process, the ALJ found that Plaintiff met the

insured status requirements of the Social Security Act and that she had not engaged in substantial gainful activity since October 30, 2007.  At step two, the ALJ summarized the medical evidence and Plaintiff's testimony and found that Plaintiff had severe impairments due to cervical degenerative disc disease with bilateral upper extremity radiculopathy, status post two cervical fusions, and lumbago.    The ALJ found that despite Plaintiff's severe impairments she had the residual functional capacity ("RFC") to perform work at the light exertional level[1] with the following additional limitations: "she can never climb ladders, ropes or scaffolds; and she can only occasionally climb ramps and stairs, balance, kneel, crouch, and crawl.  She must avoid concentrated exposure to machinery and heights.  She experiences a moderate level of fatigue and discomfort affecting her ability to work in a competitive environment." (TR 17).

In light of this RFC and the VE's testimony at the hearing, the ALJ found that Plaintiff was capable of performing her previous jobs as a credit card clerk, loan supervisor, security manager, and receiving manager and she was therefore not disabled under the Social Security Act.

Plaintiff takes issue with the ALJ's consideration of or lack of consideration of the reports and opinions of Plaintiff's treating physicians Dr. Munneke, Dr. Wright, Dr. Soo, Dr. McCreight, and Dr. Codding.

---

[1]Light work is defined as work involving lifting objects weighing up to 20 pounds at a time, frequently lifting or carrying objects weighing up to 10 pounds, and mostly walking or standing, or sitting with pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

When an ALJ considers the opinion of a disability claimant's treating physician, the

ALJ must follow a specific procedure in analyzing the medical opinion.  The regulations

define "medical opinions" as:

> statements from physicians and psychologists or other
> acceptable medical sources that reflect judgments about the
> nature and severity of [the claimant's] impairment(s), including
> [the claimant's] symptoms, diagnosis and prognosis, what [the
> claimant] can still do despite impairment(s), and [the claimant's]
> physical or mental restrictions.

20 C.F.R. § 404.1527(a).

Generally, an ALJ must give the opinion of an acceptable treating source controlling

weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic

techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart,

350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2).  "[I]f the

opinion is deficient in either of these respects, then it is not entitled to controlling weight."

Id. In that event, the ALJ must determine what weight, if any, should be given to the opinion

by considering such factors as:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment
> relationship, including the treatment provided and the kind of
> examination or testing performed; (3) the degree to which the
> physician's opinion is supported by relevant evidence; (4)
> consistency between the opinion and the record as a whole; (5)
> whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to
> the ALJ's attention which tend to support or contradict the
> opinion.

Id. at 1031 (quotation omitted). See 20 C.F.R. § 404.1527(d). The ALJ "must give good

reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." Watkins, 350 F.3d at 1300 (quotations omitted). The ALJ must also set forth specific, legitimate reasons for completely rejecting an opinion of an acceptable treating source. Id. at 1301.

Plaintiff first contends that the ALJ did not adequately explain why he rejected portions of the opinion of Plaintiff's treating physician, Dr. Munneke, with regard to Plaintiff's functional limitations. The record shows Dr. Munneke provided pain medication management to Plaintiff beginning in July 2008, approximately one year after her second cervical spine surgery, under a continuing order of the workers' compensation court. The reports of his physical examinations and treatment prescribed for Plaintiff in July 2008 (TR 253-255), August 2008 (TR 251-252), January 2009 (TR 308-309, 369-370), February 2009 (TR 306-307, 371-372), June 2009 (TR 373-375), and July 2009 (TR 376-378) appear in the record.

In February 2010, Dr. Munneke completed a written RFC assessment for Plaintiff. (TR 379-382). In that assessment, Dr. Munneke opined that due to Plaintiff's "2 level cervical laminectomy" she was capable of occasionally lifting 10 to 15 pounds, walking 6 hours total and one hour at a time in an eight-hour workday, sitting 8 hours total and one hour at a time in an eight-hour workday, never climbing, occasionally stooping, kneeling, crouching, or crawling, and must limit her exposure to moving machinery, temperature extremes, and vibrations. Dr. Munneke also opined that Plaintiff's abilities to reach, push,

and pull were limited by muscle spasms and loss of motion.

In the ALJ's decision, the ALJ summarized the medical evidence, including Dr. Munneke's treatment records, and also summarized relevant portions of Plaintiff's testimony and statements in the record concerning her usual activities and functional limitations. (TR 15-16, 18).  The ALJ expressed his consideration of Dr. Munneke's February 2010 opinion and stated that he afforded "controlling weight to Dr. Munneke's opinion that [Plaintiff] can stand and/or walk for six of eight hours, that she can only occasionally kneel, crouch, and crawl, and that she must limit her exposure to moving machinery." (TR 19-20).  The ALJ further stated that he had afforded "little weight to the remainder" of Dr. Munneke's assessment because it was not consistent with the objective medical evidence of record, which the ALJ described as "showing improvement in the claimant's overall condition since her second neck surgery in July 2007." (TR 20).

In his decision, the ALJ accurately described Dr. Munneke's reports of his ongoing treatment of Plaintiff following her second cervical operation.  Plaintiff has not provided specific instances in which the ALJ misinterpreted those treatment records.  Nor has Plaintiff pointed to specific medical evidence in the record which contradicts the ALJ's factual finding that Plaintiff's overall condition improved following her second cervical operation.  Dr. Munneke reported in August 2008 that Plaintiff "moves about reasonably well with the exception of movement of her cervical spine," and he stated only that her cervical range of motion was "restricted" without any indication that the range of movement was overly restricted in light of her previous cervical fusions.  In fact, Dr. Munneke noted Plaintiff's

8

statement during this examination that she felt "fine" and was "doing relatively well," comments that the ALJ appropriately considered in evaluating the medical and nonmedical evidence. (TR 251). Dr. Munneke's other reports of his examinations of Plaintiff contained similar statements, e.g., that she exhibited "some restriction of motion" in her neck in July 2009 but otherwise normal examination findings and that she was "doing well" and "pleased with her current level of functioning." (TR 376-377). The ALJ adequately considered the medical record and provided adequate reasons for rejecting the portions of Dr. Munneke's RFC assessment that conflicted with the ALJ's RFC finding.

Plaintiff next contends that the ALJ did not adequately explain why he rejected the opinion of Plaintiff's treating physician, Dr. Wright, with regard to Plaintiff's functional limitations. Dr. Wright, the physician who performed Plaintiff's second cervical operation in July 2007, opined in January 2008 that she was "approximately 50 % improved from her pre-operative condition," that she had a "solid arthrodesis" at the C4-5 level and a "solid fusion" at two levels from her first operation, and that she had reached "maximum medical improvement." (TR 228). Dr. Wright released Plaintiff to return to work with 10-pound lifting, pushing, and pulling restrictions and an additional restriction for "limited overhead work." (TR 228).

In the ALJ's decision, the ALJ recognized that Dr. Wright was a treating physician and that in January 2008 Dr. Wright imposed the previously-described work limitations and released Plaintiff to return to work. (TR 20). The ALJ stated he "concurs with Dr. Wright's opinion that [Plaintiff was] not disabled. However, considering the objective medical

evidence of record, the undersigned finds that the claimant's [RFC] more consistent with less than the full range of light work." (TR 20).

Plaintiff contends that the ALJ did not adequately explain why he rejected Dr. Wright's opinion. However, the ALJ set forth in his decision a summary of the relevant objective medical evidence (TR 15-16), and he was not required to recite the same evidence again in rejecting Dr. Wright's opinion. Even if, as Plaintiff suggests, the ALJ erred by failing to specify at this particular point in the decision which portions of the objective medical evidence he found to be "more consistent with" his RFC finding, there is substantial evidence in the record to support the ALJ's RFC finding, as more fully explained below.

Plaintiff also contends that the ALJ "ignore[d]" Dr. Wright's opinion that Plaintiff's continuing problems were likely caused by a non-union at the two cervical levels that were fused in her first operation. However, Dr. Wright expressly stated that the fusion at these two levels was "solid." (TR 228). Despite the solid fusion, Dr. Wright surmised that Plaintiff's continuing complaints of "mild" burning pain in her upper extremities "may be a continued source of her complaints." (TR 228). Dr. Wright's statement is not a diagnosis of "non-union" or even a statement that Plaintiff was experiencing symptoms "likely caused by a non-union." Plaintiff has misread the physician's very speculative statement concerning her continuing "mild" pain symptoms, and the ALJ did not err in failing to address this portion of the opinion.

Plaintiff next contends that the ALJ erred by disregarding the medical opinion of Plaintiff's first treating orthopedic surgeon, Dr. Soo. Dr. Soo performed Plaintiff's first

cervical operation and fusion in September 2001. One month later, Dr. Soo noted that Plaintiff wanted to return to work and that he had released Plaintiff to return to work "with the restrictions of no lifting of more than 15 pounds and limited work above the shoulder level." (TR 318).

There is nothing in Dr. Soo's statement from which to infer that these restrictions were permanent work-related restrictions, and any such opinion as to permanent work-related restrictions would have been premature under the circumstances. Plaintiff did, of course, return to work after this examination. Although she later experienced some left hand numbness that Dr. Soo noted could have been caused by a "peripheral nerve problem" (TR 317), Plaintiff worked until she re-injured her neck approximately five years later. An ALJ is required to "consider all evidence in [the] case record when [he or she] makes a determination or decision," 20 C.F.R. § 404.1520(a)(3), and the ALJ is required to discuss "the significantly probative evidence he rejects[.]" Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). However, the ALJ is "not required to discuss every piece of evidence." Id. at 1009-1010. Because the Plaintiff returned to work for a significant period of time following Dr. Soo's treatment of her and because the medical record contained evidence that her cervical impairment improved following her second cervical operation, the ALJ did not err in failing to expressly address this 2001 opinion by Dr. Soo.

Plaintiff next contends that the ALJ erred by failing to address probative evidence contained in the records of Plaintiff's treating primary care physician, Dr. McCreight. Plaintiff does not suggest that Dr. McCreight provided any opinion concerning Plaintiff's

work-related functional ability.  Rather, Plaintiff points only to notations in the record indicating Plaintiff exhibited restricted range of motion in her neck, muscle spasms in her scapular area, and weakness in her arm muscles.  Most of the page references cited by Plaintiff are not the records of Dr. McCreight but rather are the records of Dr. Wright.

There are only two office notes appearing in the record from Dr. McCreight of examinations of Plaintiff on September 25, 2006, and two days later. (TR 188-189).  There is also a note entitled "work/school release" in which Dr. McCreight notes that Plaintiff was seen in the clinic on September 25, 2006, and that she was restricted to "Light Duty" work "until Further notice." (TR 190).  These office notes pre-date Plaintiff's second cervical operation and merely set forth vague physical findings of left arm "weakness" on examination. (TR 188-189).  Additionally, these office notes do not provide evidence of the type of long-term relationship that would connote a treating physician relationship, and the ALJ did not err in failing to expressly address Dr. McCreight's office notes.

Plaintiff also contends that the ALJ erred by failing to provide adequate reasons for rejecting a medical opinion authored by Dr. Codding.  The record contains only one record of treatment of Plaintiff by Dr. Codding in October 2006. (TR 274-276).  After conducting an interview, examination, and x-rays of Plaintiff's cervical, thoracic, and lumbar spines, Dr. Codding noted his provisional diagnoses of cervical disc disease, thoracic "changes", and lumbar disc disease. (TR 275).  He advised Plaintiff to undergo further testing to determine whether there was a "nonunion" of her previous cervical fusion and he prescribed medications. (TR 275).  This was not a medical opinion that required the ALJ to conduct an

analysis of such an opinion under the established standard for evaluation of treating physicians' opinions. See 20 C.F.R. § 404.1513(a); 20 C.F.R. § 404.1527. See Martinez v. Astrue, 316 Fed.Appx. 819, 823 (10th Cir. Mar. 19, 2009)(unpublished order)(doctor's equivocal statement was not medical opinion and was not inconsistent with finding of ability to perform sedentary work). In any event, Dr. Codding was of the opinion, expressed later in an office note, that Plaintiff was not disabled at the time of his examination. (TR 273). No error occurred in this respect.

B. Analysis of Records of Other Sources

The remainder of Plaintiff's argument refers to the records of various one-time examining physicians and non-physicians, including the report of a chiropractor, Dr. McClure, the report of Dr. Jenkins who conducted a one-time workers' compensation evaluation of Plaintiff, the notes of a physical therapist, Ms. Cone, and a report compiled by a group of physical therapists in January 2008 concerning Plaintiff's functional abilities for the purpose of her workers' compensation claim.

Plaintiff suggests in a one-sentence argument that the ALJ erred by failing to discuss the "report" of Dr. Jenkins because the report "supports Dr. Wright's opinion that [Plaintiff] was limited to lifting of no more than 10 pounds and supports the other medical evidence showing [Plaintiff] had reduced range of motion of her cervical spine." Plaintiff's Brief, at 27. Plaintiff's argument is not specific enough to allow for judicial review. Dr. Jenkins provided a four-page report of a one-time workers' compensation evaluation of Plaintiff in March 2007 directed to her workers' compensation attorney. (TR 343-347). At that time,

Plaintiff was continuing to work part-time in a light duty position and she had not yet undergone her second cervical operation. Dr. Jenkins merely stated that Plaintiff could continue working in her position "pending further evaluation and treatment. . . ." (TR 347). There is no medical opinion contained in this report concerning Plaintiff's permanent work-related functional limitations, and the ALJ did not err in failing to expressly discuss this report.

The regulations allow administrative factfinders to consider "evidence from other sources to show the severity of [a disability claimant's] impairment(s) and how it affects [the claimant's] ability to work," including evidence from chiropractors and therapists. 20 C.F.R. § 404.1513(d). Social Security Ruling ("SSR") 06-3p "recognizes the potential value of opinions from medical sources who are not 'acceptable medical sources.'" Bowman v. Astrue, 511 F.3d 1270, 1275 n. 2 (10th Cir. 2008). However, the ruling clarifies that "it is still necessary to distinguish between 'acceptable medical sources' and other medical sources." Id. This is so because, as the ruling points out, "[i]nformation from . . . 'other [medical] sources' cannot establish the existence of a medically determinable impairment" or "be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06-03p, 2006 WL 2329939, at * 2.

Plaintiff contends that the ALJ erred by failing to expressly evaluate Dr. McClure's "opinions" under the factors set out in the regulations and SSR 06-3p. In the decision, the ALJ stated that he had considered the opinion of Dr. McClure, a chiropractor, who opined in a report in January 2007 directed to a workers' compensation attorney that Plaintiff's

14

"ability . . . to earn wages at the same level as before the [second neck] injury has been permanently impaired" even though she was then working in a "light duty" position. (TR 339). The ALJ stated in the decision that he had "afford[ed] little weight to Dr. McClure's opinion because it fails to set forth specific functional limitations resulting from the claimant's physical impairments." (TR 20).   Plaintiff does not explain in what respect the ALJ's consideration of Dr. McClure's report is faulty.  Rather, Plaintiff suggests only that Dr. McClure's report "support[ed] the opinions" of Dr. Munneke and Dr. Wright.  The ALJ, however, provided a specific reason that is well supported by the record for giving little weight to Dr. McClure's opinion, and the examination findings set out in the chiropractor's report do not provide evidence conflicting with the ALJ's RFC assessment, especially given the fact that the opinion was made several months prior to Plaintiff's second cervical operation.

Plaintiff contends that the ALJ failed to properly evaluate the report of a group of physical therapists.  These therapists, Ms. Mathe and Mr. Wallace, conducted a functional capacity assessment of Plaintiff in January 2008 in connection with her workers' compensation claim. (TR 348-350).  The ALJ expressed his consideration of this report in the decision and stated that he concurred with the therapists' conclusion that Plaintiff was not disabled but in light of the objective medical evidence in the record found that Plaintiff's RFC was "more consistent with less than the full range of light work." (TR 20).  The therapists noted in their report that the findings set forth in the report were not a reliable representation of Plaintiff's then-current functional ability due to some "unexpected"

15

findings indicating a lack of physical effort on Plaintiff's part. (TR 348).  The ALJ certainly did not err in failing to give the report more weight under these circumstances.

Finally, Plaintiff points to the treatment record of a physical therapist, Ms. Cone, which, according to Plaintiff, confirmed Plaintiff had a significantly reduced range of cervical motion.  The record includes office notes of physical therapy sessions conducted with Plaintiff at a clinic, Promotion Therapy, in October through December 2007. (TR 292-305).  This record reflects that Plaintiff exhibited decreased range of cervical motion at the conclusion of her treatment in December 2007 but that her strength was grossly intact. (TR 292).  Plaintiff does not suggest how her decreased range of cervical motion is in conflict with the ALJ's RFC finding.  The ALJ expressly noted he had considered this record of physical therapy treatment (TR 16), and the ALJ did not err in failing to expressly consider the cervical range of motion findings contained in this record of treatment.

C. RFC Assessment

Plaintiff contends that the ALJ's step four RFC assessment is not supported by substantial evidence in the record.  Plaintiff repeats her previous arguments that the ALJ improperly rejected certain medical opinions in the record.  Plaintiff also argues that the ALJ should have included an additional limitation of "lack of cervical mobility" in the RFC assessment. Plaintiff's Brief, at 28. The ALJ found that despite her severe impairments Plaintiff was capable of performing work at the light exertional level, including lifting and carrying 20 pounds occasionally, lifting and carrying 10 pounds frequently, and sitting, standing, and/or walking 6 hours in an 8 hour work day, with additional restrictions that she

could never climb ladders, ropes or scaffolds, she must avoid concentrated exposure to machinery and heights, and "[s]he experienced a moderate level of fatigue and discomfort affecting her ability to work in a competitive environment." (TR 17).

At her hearing, Plaintiff did not describe any functional limitation imposed by a physician resulting from a "lack of cervical mobility."  She testified that because she could not rotate her head far enough to see traffic around her she did not drive alone, but this restriction was apparently self-imposed. (TR 45).  She indicated that certain activities, including laundry and vacuuming, caused an increase in her pain, but she stated she still performed these activities, stopping as needed in order to relieve her pain.  Significantly, Plaintiff testified that she was told by her physician to stop any activity "when you feel pain." (TR 48).  However, "disability requires more than the mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988)(quotation and alteration omitted).  Dr. Munneke's most recent reports of his treatment of Plaintiff included findings of "restricted" range of cervical motion in June 2009 and "some restrictions of [cervical] motion" in July 2009, but Dr. Munneke did not indicate that this range of motion deficit was severe or resulted in functional limitations. (TR 374, 377).  In Dr. Munneke's written RFC assessment, Dr. Munneke opined that Plaintiff's abilities to reach and push or pull were restricted but did not specify to what extent. (TR 381).  He opined that Plaintiff's ability to handle objects was not restricted. (TR 381). Plaintiff's own statements to Dr. Munneke do not reflect complaints of severe cervical

limitations, and Dr. Munneke noted that Plaintiff exhibited no neurosensory loss, good grip strength, and good shoulder strength. (TR 374, 377).  Dr. Wright noted that within two months of her second cervical operation Plaintiffs neck pain was "significantly improved" in relation to her previous cervical condition. (TR 235).  Just two months later, Dr. Wright noted that Plaintiff was "more than 50% improved from her pre-operative condition." (TR 232). The ALJ did not err in failing to include additional limitations in the RFC finding concerning a "lack of cervical mobility."

Moreover, the ALJ ultimately found that Plaintiff was capable of performing four of her previous positions, including two sedentary jobs.  It is Plaintiff's burden at step four to prove her inability to perform the requirements of all past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993).  The decision upon which Plaintiff relies, Cason v. Sullivan, No. 92-7105, 1993 WL 128878 (10th Cir. Apr. 21, 1993)(unpublished order), was a step five decision in which the Commissioner bore the burden of proving the availability of jobs that the claimant could perform.  Moreover, the plaintiff in Cason described severe cervical movement limitations, none of which are evident from the record in this case.  Thus, the decision is inapposite.

The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).  The ALJ properly evaluated the

credibility of Plaintiff's allegation of disabling pain and limitations and found that her allegations were not entirely credible for reasons set forth in the decision. (TR 19).  These reasons, including Plaintiff's statements concerning her daily activities and the efficacy of her medications, are well supported by the record.  Thus, the credibility determination should stand.

The ALJ relied on vocational testimony in reaching the conclusion that Plaintiff's RFC and vocational characteristics did not preclude her from performing several of her previous positions, including two sedentary positions.  Plaintiff has not challenged the vocational testimony upon which the step four decision was rendered.  The Commissioner's decision is supported by substantial evidence in the record, and the decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING  the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ February 8th _____, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's

recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____19th_____ day of _____January_____, 2012.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE